```
                    United States District Court
                      District of Massachusetts
```

|  |  |
|---|---|
| BENNETH O. AMADI, | ) |
|     Plaintiff, | ) |
|     v. | ) |
|  | ) Civil Action No. |
| GARRETT MCMANUS, in his official | ) 16-11901-NMG |
| and individual capacity, THE | ) |
| DEPARTMENT OF CHILDREN AND | ) |
| FAMILIES, LINDA SPEARS, DCF | ) |
| COMMISSIONER, in her official | ) |
| and individual capacity, ANTHONY | ) |
| SEAN BERNARD, in his official | ) |
| and individual capacity, ROdGERS | ) |
| RANDAL, in his official and | ) |
| individual capacity, SEAN | ) |
| FERRICK, in his official and | ) |
| individual capacity, and RONALD | ) |
| STRAND, in his official and | ) |
| individual capacity, | ) |
|     Defendants. | ) |

## MEMORANDUM & ORDER

GORTON, J.

   This case arises from a child custody proceeding in the Massachusetts Juvenile Court involving Benneth Amadi ("Amadi" or "plaintiff") and his four minor children.  Amadi claims that a state court judge, the Massachusetts Department of Children and Families ("the DCF") and its employees have, inter alia, conspired to violate his constitutional rights, prevented him from seeing his children and obstructed his access to court.

-1-

This Court has already twice rejected plaintiff's claims on the grounds of Younger abstention. See Amadi v. Dep't of Children & Families, 245 F. Supp. 3d 316, 322 (D. Mass. 2017) ("Amadi II"); Amadi v. McManus, No. 16-cv-10861-NMG, 2016 WL 3814597, at *4 (D. Mass. July 11, 2016), aff'd, No. 16-1960, 2017 WL 7048503, at *1 (1st Cir. Oct. 16, 2017) ("Amadi I"). Pending before the Court this time is defendants' renewed motion to dismiss the amended complaint.  For the reasons that follow, the Court finds that Younger abstention still applies and thus plaintiff's claims for injunctive and declaratory relief will be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  This Court also concludes that plaintiff's claims for damages are barred by sovereign immunity, absolute immunity and qualified immunity meaning that he has failed to state a claim under Fed. R. Civ. P. 12(b)(6).

I.  **Background**

   **A.  Facts**

Pro se plaintiff Amadi is a licensed attorney in the Commonwealth of Massachusetts.  Defendants in this child custody dispute are the DCF, DCF Commissioner Linda Spears ("Commissioner Spears"), DCF Attorney Sean Bernard ("Attorney Bernard"), DCF Manager Randall Rogers, DCF Social Workers Sean Ferrick and Ronald Strand and Massachusetts Juvenile Court Judge Garrett McManus ("Judge McManus").

In July, 2013, the Massachusetts Probate and Family Court, which has jurisdiction over divorce proceedings in the Commonwealth, entered a temporary order granting Amadi sole legal and physical custody of his four children.

In January, 2014, the DCF began a care and protection proceeding in the Juvenile Court and removed the children from Amadi's custody. He alleges that the DCF did so based on his gender and because its employees had "the dubious intention of transferring the custody to [the mother]". The DCF defendants respond that they commenced the proceeding and removed the children from Amadi's custody in response to two reports from mandated reporters alleging that plaintiff 1) was neglecting or abusing the children and 2) refused to cooperate with the subsequent investigation of the reports. The children were temporarily placed in foster care and the DCF developed "service plans" for the parents to complete in order to regain custody.

In May, 2014, the DCF returned physical custody of the children to their mother because of her cooperation with the service plan but it retained legal custody. Defendants assert that plaintiff neither completed his service plan nor cooperated with the DCF.

Plaintiff submits that the mother regained custody as a result of gender discrimination and a conspiracy between Judge

McManus and the DCF.  Defendants vehemently deny plaintiff's allegations.

In March, 2017, the care and protection proceeding in the Juvenile Court concluded and shortly thereafter that Court issued a decision unfavorable to Amadi.  Plaintiff has since filed an appeal to the Massachusetts Appeals Court from that state court decision.

### B. Procedural History

Plaintiff has filed two lawsuits in this Court concerning the custody proceedings.  His first complaint in May, 2016, alleged, inter alia, equal protection and due process violations under the federal and state constitutions.  This Court dismissed that case ("the Prior Action") in July 2016 based on the Younger doctrine. Amadi I, 2016 WL 3814597, at *5, aff'd, 2017 WL 7048503, at *1.

In September, 2016, plaintiff filed his second complaint reasserting his previous claims but also adding claims for retaliation and conspiracy under 18 U.S.C. §§ 1983 and 1985, intentional infliction of emotional distress, other violations under state law and a preliminary injunction.  Amadi alleges that a conspiracy exists between Judge McManus and the DCF to interfere with his constitutional right to raise his children and that the DCF and its employees retaliated against him for filing the Prior Action by placing onerous restrictions on his

child visitation rights. Defendants moved to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In October, 2016, plaintiff filed an amended complaint and defendants moved to dismiss again.

In March 2017, this Court denied plaintiff's motion for a preliminary injunction, citing the Younger doctrine and concluding that plaintiff had no likelihood of success on the merits of either his prior or his new claims. Amadi II, 245 F. Supp. 3d at 322. The Court also denied as moot defendants' motion to dismiss the original complaint and directed the parties to submit memoranda on the issue of whether the Court was compelled to stay the case pending a ruling of the First Circuit Court of Appeals on plaintiff's appeal in the Prior Action. Id. In June, 2017, the Court issued an Order 1) staying the case pending a decision by the First Circuit, 2) denying defendants' motion to dismiss the amended complaint as moot and 3) permitting defendants to file a renewed motion to dismiss after the stay was lifted.

In October, 2017, the First Circuit affirmed this Court's judgment in the Prior Action and found that it had properly invoked the Younger doctrine. Amadi I, 2017 WL 7048503, at *1. In December, 2017, the Court lifted the stay in the present action and shortly thereafter defendants filed the pending

renewed motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim

### A. Legal Standard

A plaintiff faced with a motion to dismiss under Fed. R. Civ. P. 12(b)(1) bears the burden of establishing that the court has subject matter jurisdiction over the action. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). If the defendant mounts a "sufficiency challenge", the court will assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

If the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations by both parties and resolve the factual disputes. Id. The court has "broad authority" in conducting the inquiry and can, in its discretion, order discovery, consider extrinsic evidence or hold evidentiary hearings in determining its own jurisdiction. Id. at 363-64.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**B.   Younger Abstention**

Defendants seek dismissal because the doctrine of Younger abstention purportedly compels this Court to decline jurisdiction by abstaining from interfering with the custody proceeding in a Massachusetts state court.

As fully described in Younger v. Harris, 401 U.S. 37 (1971), the Younger doctrine "counsels federal-court abstention when there is a pending state proceeding." Moore v. Sims, 442 U.S. 415, 423 (1979).  The doctrine derives from "principles of equity, comity, and federalism." Steffel v. Thompson, 415 U.S. 452, 460 (1974).  It recognizes that state and federal courts bear an equal responsibility "to guard, enforce, and protect every right granted or secured by the constitution of the United States." Id. at 460-61 (quoting Robb v. Connolly, 111 U.S. 624, 637 (1884)).

The First Circuit has identified a three-step analysis to determine whether Younger applies. Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192–93 (1st Cir. 2015).  First, the state proceeding must be a criminal prosecution, civil enforcement proceeding or a civil proceeding "uniquely in the furtherance of the state courts' ability to perform their judicial functions." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989); see also Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 80-82 (2013).

Second, the case must meet the three Middlesex factors, i.e. 1) the state proceeding is ongoing, 2) it involves significant state interests and 3) it provides an adequate opportunity for the plaintiff to raise his federal claims in state court. Brooks v. N.H. Supreme Court, 80 F.3d 633, 638 (1st

Cir. 1996); see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).  In determining whether the state proceedings are ongoing, "the proper point of reference is the date plaintiff filed his federal complaint", Bettencourt v. Bd. of Registration in Medicine of Commonwealth of Mass., 904 F.2d 772, 777 (1st Cir. 1990), and a state proceeding is ongoing until the plaintiff exhausts all of his state judicial remedies. See Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 34-35 (1st Cir. 2004) (citing Huffman v. Pursue, Ltd., 420 U.S. 592 (1975)).

Finally, courts consider whether exceptions to Younger apply. Sirva, 794 F.3d at 193.  For instance, if the state proceeding is brought "in bad faith" to harass, Dombrowski v. Pfister, 380 U.S. 479, 490 (1965), or there is "concrete evidence" of bias, Brooks, 80 F.3d at 640, abstention is not warranted.

If a case satisfies all three prongs of the Younger analysis, federal courts must abstain from exercising jurisdiction even if the plaintiff asserts that important federal rights are at stake. See In re Justices of Superior Court Dep't of Mass. Trial Court, 218 F.3d 11, 17 (1st Cir. 2000) (collecting cases).  While the Supreme Court has not directly decided whether the Younger doctrine applies to § 1983 actions for damages in addition to claims for declaratory or

injunctive relief, the First Circuit has held that Younger can apply to such actions where the damages award may have the same practical effect as a declaratory judgment. Rossi v. Gemma, 489 F.3d 26, 37 (1st Cir. 2007) (citing Deakins v. Monaghan, 484 U.S. 193, 202 (1988)). Where abstention on a claim for damages is appropriate, however, the proper course is to stay the damages claim rather than dismiss the action in its entirety. Id. at 38.

As this Court has previously concluded, Younger abstention is appropriate with respect to both Amadi's previous claims and his new claims. See Amadi I, 2016 WL 3814597, at *5, aff'd, 2017 WL 7048503, at *1; Amadi II, 245 F. Supp. 3d at 322. Amadi contends that Younger abstention no longer applies because the state court proceedings have now concluded and there is no ongoing case with which the federal action could interfere. The appropriate reference point for analyzing the Younger doctrine is, however, the date on which plaintiff filed his complaint. Here, Amadi filed his complaint in September, 2016, and at that time the state proceedings in the Juvenile Court were ongoing. Furthermore, plaintiff has apparently filed a notice of appeal from the decision of the Juvenile Court and thus, for purposes of Younger abstention, that state proceeding remains pending.

Amadi also asserts that Younger abstention does not apply to his claims for damages because the Juvenile Court was not

authorized to award him damages for any constitutional violations related to those proceedings. But even if that is true, Younger abstention is warranted because a ruling on the merits of his alleged constitutional violations would be equivalent to a declaratory judgment that the DCF, its employees and Judge McManus violated plaintiff's constitutional rights in the care and protection proceeding. Such a ruling would necessarily impinge upon the state proceeding. See Rossi, 489 F.3d 26. A damages award on Amadi's § 1983 claims would be no different than a declaratory judgment with respect to the same alleged constitutional violations and thus Younger abstention remains applicable.

For those reasons, the Court will dismiss plaintiff's claims for injunctive and declaratory relief for lack of jurisdiction. With respect to the § 1983 damages claims, however, the Court would ordinarily stay rather than dismiss them pending resolution of the state proceedings because an award of damages was not addressed in the Juvenile Court proceedings. See Deakins, 484 U.S. at 202 (holding that "the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding"); Bettencourt, 904 F.2d at 781 (suggesting that a stay is appropriate when the state proceeding does not actually involve a claim for damages). In this case, although the

-11-

Younger doctrine does not permit dismissal of plaintiff's claims for damages, the dismissal of such claims is nevertheless prescribed by Fed. R. Civ. P. 12(b)(6) pursuant to the doctrines of sovereign immunity, absolute immunity and qualified immunity.

**C.   Immunity Doctrines**

**1. Sovereign Immunity**

Sovereign immunity bars suits for damages in federal court against the state or state officials acting in their official capacity unless the State has waived its sovereign immunity or Congress has abrogated it. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).  Massachusetts has not waived its sovereign immunity from suit under the Massachusetts Civil Rights Act nor has Congress abrogated the states' sovereign immunity under §§ 1983 or 1985. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and thus Congress did not override states' sovereign immunity in enacting that provision); Canales v. Gatzunis, 979 F. Supp. 2d 164, 175 (D. Mass. 2013) ("As with § 1983, the Commonwealth and its agencies are not 'persons' within the meaning of the [Massachusetts Civil Rights Act]."); see also Santiago v. Keyes, 839 F. Supp. 2d 421, 427-28 (D. Mass. 2012) (noting that courts are in agreement that the same analysis of the word "persons" under § 1983 applies to § 1985).

Nor has Massachusetts waived its sovereign immunity with respect to intentional tort claims under the Massachusetts Tort Claims Act ("MTCA"). See Wilmot v. Tracey, 938 F. Supp. 2d 116, 143 (D. Mass. 2013) (explaining that "under Section 10(c) of the MTCA, public employees remain immune from any claim arising out of an intentional tort . . . [and thus plaintiff] cannot maintain a claim against the DCF for intentional infliction of emotional distress." (internal quotation marks omitted)); M.G.L. c. 258, § 10(c).

Insofar as plaintiff sues the DCF and its employees in their official capacities for money damages for civil rights violations under state and federal law or intentional infliction of emotional distress, those actions are treated as suits against the State itself and thus are barred by the doctrine of sovereign immunity. The claims against the DCF and its employees in their official capacities will be dismissed.

### 2. Absolute Immunity

Judicial officers enjoy absolute immunity from civil actions brought against them, including actions brought under § 1983, for their judicial acts unless they acted in the clear absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 355-57 (1978). Prosecutors also have absolute immunity from claims against them arising out of an indictment or prosecution and that immunity extends to government officials who represent

an agency in the prosecution of a civil or administrative matter. Butz v. Economou, 438 U.S. 478, 515-17 (1978); see also Imbler v. Pachtman, 424 U.S. 409, 424 (1976) (holding that a prosecuting attorney is absolutely immune from civil suits for damages under § 1983).  Prosecutorial immunity does not apply, however, when a prosecutor is engaged in investigative or administrative tasks, such as when he or she gives advice to police during an investigation, makes statements to the press or acts as a complaining witness in support of a warrant application. Van de Kamp v. Goldstein, 555 U.S. 335, 342-43 (2009).  Finally, a supervisor may not be found liable under § 1983 upon a theory of respondeat superior but is liable only for his or her own acts or omissions. Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).

Judge McManus and Attorney Bernard are absolutely immune from civil suit for money damages arising out of their respective judicial and prosecutorial functions and thus the damages claims against them in their individual capacities will be dismissed.  Judge McManus acted within his jurisdiction in presiding over the care and protection proceeding in the Juvenile Court and Amadi proffers no facts that indicate he acted in the clear absence of jurisdiction in that child custody dispute.  Nor does plaintiff describe any specific action taken by Attorney Bernard in an investigative or administrative role.

The allegations against him relate solely to his prosecutorial function in representing the DCF in the care and protection proceeding.

As Attorney Bernard's supervisor, Commissioner Spears cannot be held liable under the theory of respondeat superior. Amadi has not identified any specific conduct of Commissioner Spears to support a claim of personal liability and thus the damages claims against the Commissioner in her individual capacity will also be dismissed.

### 3. Qualified Immunity

Even where a government official does not enjoy sovereign or absolute immunity, that official may still benefit from qualified immunity when engaged in the performance of a discretionary function. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).

> [Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted) (quoting Harlow, 457 U.S. at 818). Qualified immunity is applicable unless the official violated a constitutional right that was clearly established at the time of the alleged misconduct. Id. at 232 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also Malley v. Briggs,

475 U.S. 335, 341 (1986) (commenting that the doctrine of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law"). The First Circuit has held that DCF employees may raise qualified immunity as a defense to a § 1983 suit for conduct arising out of a child abuse investigation. See Kauch v. Dep't for Children, Youth & their Families, 321 F.3d 1, 4 (1st Cir. 2003).

Amadi has not identified any specific acts of Rogers, Ferrick or Strand that could be said to have violated his constitutional rights, let alone a clearly established constitutional right.  Plaintiff alleges that defendants

> boasted to plaintiff that "it is not about filing suits," and that they "would teach plaintiff how to relate with DCF and how to behave to DCF."

Amadi claims that such statements indicate that the limitations placed upon his visitation rights were made in retaliation for his filing the complaint against the DCF in the Prior Action. Even if one or more of the individual social workers named in the complaint made such comments, they do not by themselves constitute retaliation or unlawful conduct.  Indeed, there is no constitutional right to be free from child abuse investigations. Watterson v. Page, 987 F.2d 1, 8 (1993) (citing Stanley v. Illinois, 405 U.S. 645, 649 (1972)).

Without alleging any specific facts to indicate that the DCF employees violated plaintiff's clearly established constitutional right, the damages claims against them in their individual capacities will be dismissed. See Wilmot, 938 F. Supp. 2d at 138-39 (finding the allegations in the complaint against DCF employees insufficient to support a constitutional violation).  Furthermore, Commissioner Spears cannot be held liable for the conduct of the social workers under the theory of respondeat superior and plaintiff has alleged no specific conduct to render Commissioner Spears personally liable.

To the extent that Amadi is suing the individual defendants in their individual capacities for intentional infliction of emotional distress, those claims are barred by the Massachusetts common law of qualified immunity. See Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145-46 (1st Cir. 2016) (discussing how, in affirming dismissal of an intentional tort claim, "a public official, exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption"); Summers v. City of Fitchburg, No. 15-cv-13358-DJC, 2016 WL 4926415, at *5 (D. Mass. Sept. 15, 2016) ("Under Massachusetts common law, government employees acting within their discretion as public officials and in good faith are shielded from liability" for intentional tort claims).

Generalized and conclusory allegations of bad faith or malice are insufficient to overcome the presumption that government employees acted in good faith and thus are entitled to qualified immunity under Massachusetts common law. See Najas, 821 F.3d at 146; Summers, 2016 WL 4926415, at 5.

Plaintiff makes no non-conclusory allegations to suggest that any of the individual defendants acted maliciously or in bad faith but rather states that they acted vindictively towards him in retaliation for the Prior Action.  The Massachusetts common law of qualified immunity therefore applies to plaintiff's claims for intentional infliction of emotional distress and those claims will be dismissed.

### ORDER

For the foregoing reasons, defendants' motion to dismiss (Docket No. 34) is

1) with respect to plaintiff's claims for injunctive and declaratory relief, for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) due to Younger abstention, **ALLOWED**;

2) with respect to plaintiff's claims for damages against the DCF and its employees in their official capacities, under Fed. R. Civ. P. 12(b)(6) pursuant to the doctrine of sovereign immunity, **ALLOWED**; and

3) with respect to plaintiff's claims for damages against the DCF employees and Judge McManus in their individual

capacities, under Fed. R. Civ. P. 12(b)(6) pursuant to the doctrines of absolute immunity and qualified immunity, **ALLOWED**.

**So ordered.**

                                                                                 /s/ Nathaniel M. Gorton  
                                                                                 Nathaniel M. Gorton  
                                                                                 United States District Judge

Dated October 26, 2018